ROBIN ANTHONY BERGSOHN, ESQ.
3106 SHADELAND DRIVE, FALLS CHURCH VA 22044
TEL: (703) 241-5457  FAX: 866-667-0510
E-mail: rbergsohn@gmail.com

*Member D.C., Maryland and Virginia Bars*

May 30, 2013

Steven Lerman, Provost
George Washington University
Rice Hall
2121 Eye Street, Suite 813
Washington, DC 20052

Re:   Student: Sina Chernari, School of Medicine
      Academic Dishonesty Allegations
      Appeal from decision to dismiss on grounds of academic dishonesty

Dear Provost Lerman:

I am an attorney representing Sina Chenari with regards to the above allegation of academic dishonesty, and more particularly, the decision of the MSEC and Dean Akman to expel Mr. Chenari from the School of Medicine. Please accept this letter as a formal appeal of that decision.

The March 15, 2013 "Report of Subcommittee on Professional Comportment Pertaining to Allegations of Academic Dishonesty against Sina Chenari" explicitly concluded the following:

> ... Mr. Chenari violated the Section F (2)(a)(6) of the Honor Code that states that students will not "violate any other commonly understood principals of academic dishonesty." Id., p. 4

**This conclusion is not supportable by the agreed upon facts pertaining to the December 14, 2012 incident.**

The facts and circumstances surrounding this incident are not in dispute, but they in no way support any allegation of academic dishonesty. Mr. Chenari did not cheat, lie, dissemble, or do anything that could reasonably be interpreted as dishonest. The word "dishonest" has a plain meaning in the English language, and it must involve some element of deceit. That essential element is entirely absent in this case.

Mr. Chenari was clearly guilty of openly violating the rules of the exam when he continued to pencil in his answers after time was up. He was likewise guilty of insubordination when he did not comply with the proctor's request to put down his pencil. Mr. Chenari acknowledged this in this statement to the MSEC, and pointed out that the George Washington University Guide to Student Rights and Responsibilities,



Chenari 130
PltfRPD1 000130

Code of Student Conduct prohibits "non-compliance" with reasonable directions of University Officials . . . acting in performance of their duties"

However, violating a time rule and insubordination can not be construed as academic dishonesty because these actions do not in any way involve deceit. There is no doubt that Mr. Chenari's actions warrant disqualification, but there is grave doubt that they warrant expulsion.

Mr. Chenari made a mistake, but that mistake was completely out in the open. If one examines his motivation, it is clear that he did not go into this exam with any thought of employing some artifice to obtain some unfair advantage or to cheat on the test. He made a careless and stupid mistake in forgetting to "bubble" in his answers on the front of the answer sheet, and his actions were wrong in trying to correct that mistake. However, there was no intent to do anything dishonest or malicious.

As pointed out in Mr. Chenari's statement to the MSEC, The Code of Student Conduct provides for various sanctions against any student who has violated its provisions, with the most serious being expulsion. It also provides that the "Code" seeks to preserve flexibility in the imposition of sanctions so that each student . . . is afforded the greatest possibility for appropriate and just treatment. Lastly, it states that "Significant mitigating or aggravating factors shall be considered, which may include the current demeanor and the presence or lack of a disciplinary or criminal record of the offender, as well as the nature of the offense and the extent of any damage, injury, or harm resulting."

The essential question to be determined on this appeal is whether the decision to expel Mr. Chenari is "appropriate and just treatment." This is the standard set forth in the Code of Student Conduct. The Code specifically mentions certain factors which "shall be considered" in deciding on the appropriate sanction for a violation.

The first factor to be considered is the student's "current demeanor." The "Report of Subcommittee on Professional Comportment Pertaining to Allegations of Academic Dishonesty against Sina Chenari" apparently failed to take this factor into consideration because its report makes no mention of it.

Likewise, Dean Akman appears not to have taken this factor into consideration because his Letter of May 22, 2013 also makes no mention of Mr. Chenari's "current demeanor" although Dean Akman did comment that "I appreciate your verbal and written apology."

The second factor to be considered is the student's disciplinary or criminal record. Once again, neither the Subcommittee nor Dean Akman made any mention of the fact that Mr. Chenari had no record of academic dishonesty or criminal behavior.

The third factor to be considered is the nature of the offense. Mr. Chenari was clearly guilty of insubordination towards a faculty member in failing to immediately cease "bubbling" in his answers after being instructed to put his pencil down by the proctor. As

noted above however, he did not go into this exam with any thought of employing some artifice to obtain some unfair advantage or to cheat on the test. He acted rashly in the heat of the moment, but there was no premeditated intent.

The last factor to be considered is the "extent of any damage, injury, or harm resulting" from the misconduct. If Mr. Chenari were given a zero on the exam and a failing grade for the course, those sanctions would completely remove any harm resulting from his actions and send a clear message that the instructions of any proctor will be strictly enforced by the University.

The March 15, 2013 Subcommittee report, and the May 22, 20123 letter from Dean Akman completely failed to weigh any of the above four factors in reaching the decision to apply the sanction of expulsion against Mr. Chenari. The Subcommittee completely failed to advance any reason for its decision to impose the extreme sanction of expulsion. Dean Akman likewise did not advance any reason for his decision to impose the extreme sanction of expulsion.

The failure of the Subcommittee and Dean Akman to apply the "appropriate and just treatment" standard as set forth in the University's "Code of Student Conduct" is a clear denial of Mr. Chenari's due process. In making the decision to impose the most extreme sanction available, the Subcommittee and Dean Akman failed to follow the University's own rules and standards. Moreover, the Subcommittee's decision to pigeonhole Mr. Chenari's actions into a charge of Academic Dishonesty was insupportable on its face. The facts made no showing whatsoever of any behavior that could fairly be interpreted as involving Academic Dishonesty. That is not to argue that Mr. Chenari was innocent, but insubordination and cheating are two different things and the appropriate sanction for one is not the same as for the other.

Wherefore, Mr. Chenari respectfully requests that the following sanctions be imposed:

1. That his 12/14/12 surgery shelf exam be given a grade of "F"
2. That he be given a grade of "F" for the course
3. That the recommendation to dismiss him from the M.D. program be reversed
4. That he be placed on academic probation for one year

Thank you very much.

Yours truly,

Robin Bergsohn, Esq.