## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SINA CHENARI,

              Plaintiff,

           v.

GEORGE WASHINGTON UNIVERSITY,

              Defendant.

Civil Action No. 14-929  (ABJ)

Judge Amy Berman Jackson

### DECLARATION OF WALLACE JUDD, PH.D.

Wallace Judd, Ph.D. hereby declares, pursuant to 28 U.S.C. § 1746, as follows:

1.     My name is Wallace Judd, Ph.D.  I hold an A.B. in English from Princeton (1966), an M.Ed. in Elementary Education from Harvard University (1967), and a Ph.D. in Education from Stanford University (1981). Since 2007, I have served as the President of Authentic Testing Corporation, consulting on examination development and certification criteria for numerous organizations, such as the American College of Surgeons and the American Society for Tests and Measurement.

2.     Through my education, knowledge, training and experience I have gained expertise in the fields of certification examinations, examination administration, and examination scoring. A statement of my professional credentials in these fields is set forth in a report I prepared concerning my review of issues related to the Surgery Shelf Examination in which Plaintiff Sina Chenari participated as a medical student at the George Washington University School of Medicine and Health Sciences on December 14, 2012. A true and accurate copy of my report is attached as Exhibit A hereto and incorporated herein by reference. The statement of my professional credential is set forth at pages 18 – 20 of the report.

3.      I hold the opinions set forth in my report (Exhibit A hereto) and hereinbelow to a reasonable degree of scientific certainty within the fields of certification examinations, examination administration, and examination scoring.

4.      My opinions in this matter include the following:

        a.      The element of timing on a timed exam is an important factor to its scoring.

        b.      The time limit for taking the Surgery Shelf Exam was explicit.

        c.      The time limit explicitly stipulates that examination time will not be extended beyond the close of the examination for transferring answers to the answer sheet.

        d.      A student who continues to bubble in answers on an exam after time is called obtains an advantage that other students do not obtain.

        e.      In this case, according to Mr. Chenari's own testimony, after time was called, he answered an additional 30 questions. Without these additional items, Mr. Chenari would have received the lowest score on the exam.

        f.      Without specific time limits on exams, it is impossible to norm test results or interpret candidate qualifications uniformly.

        g.      Given medical students' extensive experience taking standardized tests, observing the time limits of a standardized examination is a commonly understood principle of academic honesty.

        h.      Students with a disability may be entitled to an accommodation under the federal Americans with Disabilities Act with respect to taking standardized exams, but the provisions for accommodation require the following:

                (1)     The candidate must request accommodation prior to the exam.

(2)     The candidate must have his or her disability documented by a physician or board certified professional.

(3)     The physician or board certified professional must recommend or approve an appropriate accommodation for the candidate.

(4)     The accommodation must be approved by the certification agency – here the National Board of Medical Examiners, not the George Washington University – prior to the exam.

I declare under the penalty of perjury under the laws of the United States of America that the forgoing is true and correct.

Executed this 4th day of August, 2015.

_Wallace Judd_

Wallace Judd, Ph.D.

# Expert Witness Report
# Chenari vs. George Washington University
By Wallace Judd, Ph.D.,
President
Authentic Testing Corporation

Submitted April 14, 2015

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SINA CHENARI,

              Plaintiff

                               Civil Action No. 14-929 (ABJ)

                               Judge Amy Berman Jackson

GEORGE WASHINGTON UNIVERSITY,

              Defendant.

Jackson/Campbell              Chenari Report              Dr. Wallace Judd

# <u>Contents</u>

Opinions ....................................................................................... 3

    What Is a Test? .......................................................................... 3

    Shelf Exam Instructions .............................................................. 5

    Advantage Conferred ................................................................. 7

    Disability Accommodations in General ....................................... 9

    Disability Accommodations Available to Chenari .................. 13

    Ramifications for Testing ......................................................... 16

Information Considered .................................................................. 17

Exhibits ......................................................................................... 18

    Education ................................................................................... 18

    ANSI Assessor ......................................................................... 18

    Partial Certification Consulting Client List .............................. 18

    Publications .............................................................................. 19

Other Testimony ............................................................................ 20

Compensation ................................................................................ 20

    Compensation Paid To Date ..................................................... 20

    Compensation for the Report .................................................... 20

    Compensation for Testimony ................................................... 20

Jackson/Campbell                 **Chenari Report**                 Dr. Wallace Judd

## Opinions

The opinions below reflect on the specifics of the administration of the Surgery Shelf Exam for 8-week rotation, produced by NBME (National Board of Medical Examiners) and administered by Jessica Ruiz on December 14, 2012 for George Washington University Medical School.

### **What Is a Test?**

A critical component of a test is a time limit.

Educational Testing Service, the largest provider of educational testing in the U.S., provides a glossary which does not define a test, but does define a 'Standardized test'.

**Standardized test**

> A test in which the content and format of the test and the conditions of testing (***such as timing***, directions, use of calculators) are controlled to make them the same for all test takers. (Exceptions may be made for test takers with disabilities.) [Italics mine.]

https://www.ets.org/understanding_testing/glossary/

The ASTM, (originally the American Society for Testing and Materials) a non-profit organization that has developed over 11,000 standards for processes and standardized testing of materials, has developed a testing standard.  ASTM E2849 *Standard Practice for Professional Certification Performance Testing*, section 2.1.20, defines a test, as:

> "a sampling of behavior ***over a limited time*** in which an authenticated examinee is given specific tasks under specified conditions, tasks that are scored by a uniformly applied rubric." [Italics mine.]

Finally, the *Standards for Educational and Psychological Testing*, copyright 2014, from AERA, American Educational Research Association, APA (American Psychological Association) and NCME (National Council on Measurement in Education) Chapter 4 page 80 states:

> Test Administration Specifications.  Administration procedures include mode of test delivery (e.g., paper and pencil or computer based), ***time limits***, accommodation procedures, instructions… etc.

The *Standards*, p. 83 later states,

> "A key consideration in developing test administration procedures and materials is that test administration should be fair to all examinees.  This means that instructions for taking the test should be clear and ***that test administration conditions should be standardized for all examinees***.  It also means consideration must be given in advance to appropriate testing accommodations for examinees who need them…" [Italics mine.]

**The American Board of Anesthesiology:**

**Jackson/Campbell**              **Chenari Report**              **Dr. Wallace Judd**

<u>Testing Time</u>

The Part 1 Examination will be divided into two sections of 125 questions each.  Candidates will have 2 hours and 20 minutes to complete each section, with an optional 20 minute break between the two sections.

http://www.theaba.org/pdf/ABAPart1ExamGeneral.pdf

One common element in all the documentation above is that examinations qualifying candidates for certification or licensure include in their specifications a time limit which is applied equally to all examinees, with the exception of accommodations described below.

MIT, on their Information for Students on Specific Accommodations, is very specific.

**Extended Time:** The standard practice in the field of post-secondary education regarding extended exam time is the allocation of time-and-one-half as the extended period. It may be appropriate to increase the allotted amount of exam time in certain situations, such as in cases which the student's accommodation requires the use of technology aids, scribes or readers; or when the student's documentation clearly supports the need for an extraordinary amount of extended time. In courses and/or programs in which student performance within a prescribed time period is considered to be an essential academic requirement, the Institute has established that, as a general rule, students do not have the right to untimed exams or to an unlimited amount of time for exams.

http://web.mit.edu/uaap/sds/students/info_specifics.html

For a detailed description of time criticality in adaptive testing, see *Item Response Times in Computerized Adaptive Testing*, by Lutz F. Hornke, Aachen Technical University, Germany, in *Psicologica* (2000) 21,175-189.

Jackson/Campbell              Chenari Report              Dr. Wallace Judd

## Shelf Exam Instructions

The time limit for taking the Surgery Shelf exam by plaintiff was explicit and made clear to him several times during the administration of the exam.

Following are instructions the proctor received excerpted from the *Chief Proctor's Manual*, copyright 2010-2014 by NBME. (Note: bold below is in the *Chief Proctor's Manual* unless otherwise noted.) Upon questioning, the author reserves the right to quote more extensively from the manual.

Proctor's instructions, page 8, **RECOMMENDED TIME ALLOWANCES**

> Clinical Science examinations are designed to be administered in a **two hour and thirty minute** time period.

Proctor's instructions, page 10, heading **SUPERVISING THE EXAMINATION,**:

> During the administration of the examination, proctors should observe the examinees to ensure that:
>
> - All examinees stop writing at the end of the session.  Examinees are not to be given extra time to transfer answers from the test book to the answer sheet after time is called.

Proctor's instructions, page 12, heading **HANDLING IRREGULAR INCIDENTS**:

> **Irregular Behavior**.  Irregular behavior that occurs during an examination includes the following:
>
> - **Continuing to mark answers** or erase on the answer sheet after the **STOP** announcement

**TEXT FOR ADMINISTERING THE EXAMINATION**

Text in the boxes below was read aloud to all candidates taking the Shelf examination.

Proctor's instructions, page 16:

> After examinees have completed reading the instructions, say:

> You are permitted to make calculations or notes in your test book, but **you will receive credit for an answer only if it is properly recorded in the appropriate space on the answer sheet.** Time will not be extended beyond the close of this examination for transferring your answers.

**Jackson/Campbell**                **Chenari Report**                **Dr. Wallace Judd**

Proctors instructions, page 17

> Read the following paragraph if you are administering a Clinical Science Discipline Examination.

> - You will have **two hours and thirty minutes (2 hours and 30 minutes)** to complete this exam. When I give the signal, you may begin to work. Are there any questions?

Proctors instructions, page 18:

> Thirty minutes before the end of the session, say:

> You have 30 minutes in which to finish this examination. Please remember that all responses must be recorded on your answer sheet in order to receive credit. No additional time will be allowed for transferring answers.

Thus, from the proctor's verbal instructions, there was no ambiguity about the responsibility of the plaintiff to record his responses on the answer sheet within the time limit allotted.

Jackson/Campbell                    **Chenari Report**                    Dr. Wallace Judd

## Advantage Conferred

The facts of the case are summarized in the table below.  The NBME Surgery Shelf test in 2012 was comprised of 100 items.  Mr. Chenari's reported score on the test was 71, which put him in the 43rd percentile, according to the *NBME Surgery-Scaled Score Descriptive Statistics*, December 14, 2012.  The reported test mean was 73.7, and the reported test standard deviation was 8.1, which meant that Mr. Chenari's reported score was 0.33 standard deviations below the mean.



|                    |        |                                                    |
|--------------------|--------|----------------------------------------------------|
|                    | 100    | Items in test                                      |
|                    | 71     | Chenari score                                      |
|                    | **43%**| **Chenari percentile** [1]                         |
| **Observed facts** | **-0.33** | **Chenari Standard Deviation**                  |
|                    | 30     | Chenari extra items [2]                             |
|                    | 73.7   | Test mean score [1]                                |
|                    | 8.1    | Test standard deviation [1]                        |

|                |         |                                                    |
|----------------|---------|----------------------------------------------------|
|                | 41      | Chenari score without 30 extra items               |
| **Inferences** | 59      | Lowest reported score on Surgery Shelf exam [1]    |
|                | **0%**  | **Chenari percentile with 30 fewer items**         |
|                | **-4.04** | **Chenari standard deviation with 30 fewer items** |

However, according to Mr. Chenari's own testimony, he marked the responses to thirty items in his response sheet after the time limit for the test had been called and after candidates were instructed to put down their pencils.

Subtracting the thirty extra items Mr. Chenari answered after the time limit, his score without the items would have been 41.  The lowest reported score on the surgery shelf exam[1] for that session was 59.  So Mr. Chenari would have received the lowest score on the exam.

The *NBME Surgery Exam-Score Interpretation Guide*, August 2012, reports a Standard Error of Measurement (SEM) of 4 points.  So note that these conclusions would still be approximately the same within the error band of +/- 4 points.

Without the additional 30 items, his score would have been 4.04 standard deviations below the mean[2].  A graphical illustration of the difference is presented on the next page.  The graph on the next page depicts how thirty extra items impacted Mr. Chenari's score on the shelf exam.

Jackson/Campbell                Chenari Report                Dr. Wallace Judd

<sup>1</sup> Source: *NBME Surgery-Scaled Score Descriptive Statistics*, December 14, 2012
<sup>2</sup> Source: The *NBME Surgery Exam-Score Interpretation Guide*, August 2012



Note that with thirty extra items, Mr. Chenari's reported score is slightly below the mean. However, without the thirty extra items, his score can be projected to be below the fourth standard deviation of his cohort.

Jackson/Campbell               **Chenari Report**                Dr. Wallace Judd

## Impact on Test Interpretation

The NME Exams are currently given online – both in medical schools and at Pearson test centers. Note that in an online administration the exam terminates at the time limit, in which case plaintiff would not have had the opportunity to unilaterally decide to extend the test time for filling in his responses on the answer sheet.

## Disability Accommodations in General

Disability accommodations in general must be declared prior to enforcement.

Every examination I have consulted on the development of over the past 30 years has had a specified time limit.  The individual candidate cannot adjust time limit.

However, since the adoption of the Americans with Disabilities Act in 1990, all tests have also had specific, documented provisions for accommodations made for candidates with disabilities, as defined by the ADA.

In every case with which I am familiar, these provisions for accommodation have had common points:

1) The candidate must request accommodation prior to the exam.

2) The candidate must have his or her disability documented by a physician or board certified professional.

3) The professional must recommend or approve an appropriate accommodation for the candidate.

4) The accommodation must be approved by the certification agency prior to the exam.

A sample of the documentation typically required is included below.  This accommodation request form is from the candidate handbook of NAESAI, the National Association of Elevator Safety Authorities, International.

Jackson/Campbell               Chenari Report               Dr. Wallace Judd

## APPENDIX 8
# ADA Accommodation
# Special Testing Accommodation Request Form

Candidates with disabilities covered by the Americans with Disabilities Act (or Canadian/Australian equivalent) must complete this form and have an appropriate licensed professional complete the Documentation of Disability-Related Needs Form in order for their accommodations request to be processed

### **Applicant Information**

Name: _____

Address: _____

Address: _____

City: _____ State: _____ Zip Code: _____

Home Phone: _____ Cell Phone: _____

Email Address: _____

### **Special Testing Accommodation**

Exam Date and location (test center) for which you are requesting accommodation:

Address: _____

City: _____ State: ____

I would like to request the following testing accommodation(s):

      ❑ Circle answers in test booklet

      ❑ Extended testing time (time and a half)

      ❑ Large print test. Point size: ____

      ❑ Reader

      ❑ Separate testing area

      ❑ Special seating, please describe: _____

      ❑ Wheelchair accessible testing site

      ❑ Other special accommodations (please specify):

**Jackson/Campbell**          **Chenari Report**          **Dr. Wallace Judd**

Applicant Signature: _____

APPENDIX 9
# Documentation of Disability-Related Needs By Qualified Provider

This form must be completed by a licensed health care provider or an educational / testing professional. The nature of the disability, identification of the test(s) used to confirm the diagnosis, a description of past accommodations made for the disability, and the specific testing accommodations requested must be included.

### Professional Documentation

I have known _____ since _____ in my capacity as a(n)
        (Name of Applicant)       (Date)

_____, _____
     (Professional Title)         (Board Certification)

The applicant discussed with me the nature of the test being administered. It is my opinion that because of this applicant's disability described below, he/she should be accommodated by providing the special arrangements listed on the Special Testing Accommodation Request Form.

Comments on Disability: _____

_____

_____

Signature: _____

Title: _____

Organization: _____

License # (if applicable): _____

Date: _____

Candidate Instructions: Return this form with a copy of the *Special Testing Accommodation Request Form* to:

     Executive Director
     NAESA International Incorporated
     6957 Littlerock Road SW
     Suite A
     Tumwater, WA 98512

Written accommodation requests may also be scanned and submitted via email to: dotty@naesai.org with the words: *Accommodation Request* in the subject line of the email.

Jackson/Campbell            Chenari Report            Dr. Wallace Judd

## Disability Accommodations Available to Chenari

Specific disability accommodations were advertised and available to plaintiff.

Plaintiff demonstrably had multiple occasions on which to familiarize himself with disability accommodations and how to access them. Each will be discussed separately. The most evident of these occasions are:
- Admission to GWU undergraduate school
- Admission to GWU Medical School
- GWU Honor Code

### Admission to GWU Undergraduate School

Plaintiff's Initial Disclosures acknowledge plaintiff graduated from GWU undergraduate school with a Bachelor of Science degree and *Magna cum Laude* honors. Consequently, plaintiff must have taken either the College Board exam or the ACT exam required for application. Both exams have explicit directions for how to access disability accommodations.

The SAT website addresses Students with Disabilities by providing: *The steps to receive test accommodations:* excerpted below.

> If you have a documented disability, you may be eligible for accommodations on SAT Program tests. Visit our Services for Students with Disabilities (SSD) site for information about accommodations, the request process, and required documentation. If you've already been approved by SSD to take the PSAT/NMSQT or AP Exams with accommodations, you don't need to submit a second request.
>
> To receive test accommodations, you need to:
>
> **Get approved**
>
> College Board approval is required for every student — even those who receive accommodations at school. The College Board's request process can take up to seven weeks, so start early. Documentation of the student's disability and need for specific accommodations is always required and must sometimes be submitted for College Board review. Visit the SSD site for information about the approval process.
>
> **Learn about taking the SAT with accommodations**
>
> Deadlines for accommodations requests are earlier than SAT registration deadlines. If you plan on taking the SAT in October, for instance, it's best to begin the process in the spring of the previous school year — well before summer recess. Learn more about Taking the SAT with Accommodations on our SSD page, and view the Calendar for all test dates and deadlines for completing SSD accommodations requests.
>
> **Register for the SAT with accommodations**

Jackson/Campbell                Chenari Report                Dr. Wallace Judd

> All students who request accommodations are assigned a seven-digit SSD Eligibility Code. This number is printed on the student's decision and eligibility letters. SSD Coordinators can find this number by looking on their SSD Online dashboard.
>
> If registering for the SAT online, enter your SSD Eligibility Code when prompted. If registering by mail, include a copy of your SSD Eligibility Letter in the envelope with your SAT registration form.
>
> Check your SAT admission ticket. If you've been approved for accommodations, they should be noted. If they're not, call SSD at 212-713-8333 to ensure approved accommodations are added to your pending registration.

Similar instructions are included in print applications. Plaintiff must have encountered these ADA accommodations invitations prior to application to his undergraduate program at GWU.

## Admission to GWU Medical School

Plaintiff's initial disclosures acknowledge plaintiff's MCAT scores put him in the 74th to 79th percentile. The MCAT website has clear instructions to applicants for accessing ADA accommodations.

> MCAT® Exam with Accommodations
>
> The AAMC is committed to providing all individuals with an opportunity to demonstrate their proficiency on the MCAT exam, and that includes ensuring access to persons with disabilities in accordance with relevant law.
>
> If you have a disability or medical condition that you believe requires an adjustment to standard testing conditions, we encourage you to apply for accommodated testing. A decision on most requests will be made within 60 days of receipt of a complete application.
>
> Below you will find a general overview of the accommodations process along with links to helpful information. You can also click on the menu to the left to navigate to a specific page.
>
> Preparing Your Application
>
> Take some time to familiarize yourself with the application process. Knowing application types, requirements, and review cycles will ensure that your request is processed as quickly and smoothly as possible. Submitting a late or incomplete application may jeopardize your ability to test on your preferred test date with accommodations.

Jackson/Campbell                 Chenari Report                 Dr. Wallace Judd

- How do you know if you need accommodated testing?
- Application Time Frames and Types
- Application Requirements

Submitting Your Application

> Once you have learned the requirements associated with your request and assembled your supporting documentation, it is time to complete and submit your application. All initial requests for accommodations should be submitted online using the MCAT Accommodations Online system. For more information, click the link below.

- How to Apply

Receiving Your Decision

> We will notify you via email once we have made a determination on your request. You can view your decision letter by logging into the MCAT Accommodations Online system. Your decision letter will also outline any additional steps you need to take at that point.

Confirming Your Accommodations

> If your request is approved, there are a few things you may need to do to confirm a test date with your accommodations. For more information on the confirmation process, click the link below.

Consequently, plaintiff can reasonably be assumed to have been aware of accommodations provided for standardized tests, like the Shelf exam.

**GWU Honor Code**

The GWU *Guide to Student Rights and Responsibilities* in **University Policy on Equal Opportunity** states (page 4):

> To request disability accommodations, students should contact the Office of Disability Support Services at (202) 994-8250 or dss@gwu.edu.

The GWU *Guide to Student Rights and Responsibilities* in **Prohibited Conduct** explicitly states (page 8):

> n. Non-compliance – Failure to comply with reasonable directions of University officials… acting in performance of their duties.

Page 15 of 20

**Jackson/Campbell**                    **Chenari Report**                    **Dr. Wallace Judd**

In continuing to fill in his answer sheet, plaintiff was acting in non-compliance with a University official.  The proctor in administering the exam was a University official, nominated as a proctor by the University to NBME and approved by NBME as a proctor.

The GWU *Regulations for M.D. Candidates* in section *F. The Honor Code* states (page 8):

> Students will not … (6) Violate any other commonly understood principles of academic honesty

Given extensive experience taking standardized tests, observing the time limits of a standardized examination is a commonly understood principle of academic honesty.

## <u>Ramifications for Testing</u>

If the plaintiff's request for remedy is awarded, the precedent will render all certification and licensure tests vulnerable to selective modification of time limits by any candidate.  Without specific time limits it will be impossible to norm test results or interpret candidate qualifications uniformly.

**Jackson/Campbell**                    **Chenari Report**                    **Dr. Wallace Judd**

## Information Considered

American Board of Anesthesiology, *Part 1 Exam, General, (2014)*
http://www.theaba.org/pdf/ABAPart1ExamGeneral.pdf

*Chief Proctor's Manual,* © 2010-2014 by NBME.

The George Washington University *Guide to Student Rights and Responsibilities*, 2011-2012, George Washington University.

*NBME Subject Exams Documentation (2014)*
http://www.nbme.org/PDF/SubjectExams/subexaminfoguide.pdf

MCAT® Exam with Accommodations (2014)
https://www.aamc.org/students/applying/mcat/accommodations/

*Regulations for M.D. Candidates,* George Washington University Medical School

SAT® Students with Disabilities (2014)
http://sat.collegeboard.org/register/for-students-with-disabilities

*Standards for Educational and Psychological Testing*, (2014), AERA, (American Educational Research Association), APA (American Psychological Association) and NCME (National Council on Measurement in Education)

*Standard Practice for Professional Certification Performance Testing*, (2013) ASTM E2849.

*Understanding Testing: Glossary* (2014) ETS (Educational Testing Service)
https://www.ets.org/understanding_testing/glossary/

Experience consulting with 38 clients on multiple certification or licensure exams in the past ten years.

Experience as an ANSI assessor auditing the accreditation of nine organizations representing twelve certifications under the ISO/IEC 17024 Standard.

Experience as chair of the ASTM E36.80 Subcommittee on Performance Testing.

Experience as Executive Director of the Performance Testing Council 2003-2005, and as a Board member of the Performance Testing Council for 8 of the last 9 years.

Page 17 of 20

Jackson/Campbell          Chenari Report          Dr. Wallace Judd

## Exhibits

Following are Dr. Judd's credentials as a testing expert.

### Education
- ♦ Stanford University, 1981, Ph.D., Education.  Dissertation*: Incorporating item difficulty appraisal into computerized adaptive testing*.
- ♦ Harvard University, 1967, M.Ed., Elementary Education
- ♦ Princeton University, 1966, A.B., English

### ANSI Assessor

ANSI assessor for ISO/IEC 17024  2006 – present.  ANSI surveillance clients have included or currently include:

ASIS (American Society for Information Security)
ASNDT (American Society for Nondestructive Testing)
CompTIA (Computer Testing Industry Association)
CMCI (Construction Manager Certification Institute)
IHMM (Institute of Hazardous Materials Management)
MSSC (Manufacturing Skill Standards Council)
NATE (North American Technician Excellence)
NCCCO (National Council for the Certification of Crane Operators)
SMRPCO (Society for Maintenance & Reliability Professionals Certification Organization)

Executive Director of the Performance Testing Council 2003-2005;  Board member of the Performance Testing Council for 8 of the last 9 years.

Committee chair of ASTM E36.80, and primary author of *ASTM E2849, Practice for Professional Certification Performance Testing*, published December, 2013.

### Partial Certification Consulting Client List

As President of Authentic Testing Corporation for the past 7 years, Dr. Judd has served as consultant to many associations and corporations in support of their certifications.  In addition, over his career since 1982, he has helped develop certifications for numerous enterprises.
- ACS (American College of Surgeons)
- AAMI (American Association of Medical Instrumentation)
- AAPM (American Association of Pain Medicine)
- AEE (Association of Energy Engineers)
- AHIMA (American Health Information Management Association)
- ANCC (American Nurses Credentialing Center)
- ASTM (Formerly American Society for Tests and Measurement)
- ASHP (American Society of Healty-System Pharmacists)
- ARDMS (American Registry of Diagnostic Medical Sonography)
- Citrix Systems
- Cisco Systems

Jackson/Campbell                    Chenari Report                    Dr. Wallace Judd

- CrossFit
- DOE (U.S. Department of Energy)
- FITSI (Federal Information Technology Security Institute)
- GARP (Global Assessment of Risk Professionals)
- Georgia Tech University
- GIAC (Global Information Assurance Certification)
- Healthy Children (Lactation counseling)
- Honeywell Corporation
- Heuristic Solutions
- IAC (Intersocietal Accreditation Commission)
- IAI (International Assessment Institute)
- IAPP (International Association of Privacy Professionals
- IIA (The Institute of Internal Auditors)
- Interplay Energy Corporation
- Kelly Services
- LBNL (Lawrence Berkeley National Labs)
- Linux Foundation
- NAEC (National Association of Elevator Contractors)
- NAESAI (National Association of Elevator Safety Authorities, International)
- NCS4 (National Center for Spectator Sports Safety and Security)
- NEEC (Northwest Energy Efficiency Council)
- NICET (National Institute for Certification in Engineering Technology)
- NJDEP (New Jersey Department of Environmental Protection)
- Oracle Corporation
- PECB (Professional Evaluation and Certification Board)
- Professional Testing
- Red Hat

## Publications

**Judd, Wallace,** *17024:12 Compliance Handbook, Leesburg, VA, Authentic Testing Corp., 2014, 2nd edition.*

*Documenting the Profession: CDI Practitioner*, 2013, Ryan, Jessica; Niederpruem, Michael; Patena, K; and **Judd, Wallace**, *Perspectives in Health Information Management.*

*Fundamentals of Robotic Surgery Consensus Conference 1:  Outcomes Measures,* Satava, Richard M.; Chauhan, Sanket; Smith, Roger D; Sweet, Robert M; Scott, Daniel; Advincula, Arnold; Aggarwal, Rajesh; Anvari, Mehran; Armstrong, John; Neary, Paul; Koch, Michael; Kunkler, Kevin; Rush, COL Robert; **Judd, Wallace**; Sinanan, Mika; Stefanidis, Dimitrios; Sundaram, Chandru;  Verrier, Edward; Patel, Vipul R; 2013, *Annals of Surgery.*

**Judd, Wallace,** *17024 Compliance Handbook, Leesburg, VA, Authentic Testing Corp., 2010*

Jackson/Campbell                **Chenari Report**                Dr. Wallace Judd

**Judd, W.,** *(2009) Gating items: Definition, significance, and need for further study,*
PAREonline.net.

## Other Testimony

I have not testified as an expert witness in other court cases.

## Compensation

### Total Compensation Billed To Date, Including the Report

$10,062.50= $1,812.15 + 437.50  + 6,687.50 + 1,125.00

### Compensation for the Report Only

Research   $250 * 10 hours =              $2,500.00
Report Writing:  21.25 hours * $250 =     $5,312.50
**Total compensation for Report**:        $7,812.50

### Compensation for Testimony

Testimony:      $ 2,500 per day.
Trial Fee:      $ 3,000 per day.