UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SINA CHENARI,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>GEORGE WASHINGTON UNIVERSITY,<br><br>　　　　　Defendant. | CIVIL ACTION NO.: 14-929 (ABJ) |

**DECLARATION OF SINA CHENARI**

　　My name is Sina Chenari. I am the plaintiff in this case. I graduated from George Washington University (GWU) with a bachelor's degree in 2009. I am 28 years old. I submit the following declaration in support of my opposition to GWU's motion for summary judgment under penalty of perjury.

**Memorandum of Points and Authorities**

　　I have reviewed the memorandum of points and authorities prepared by my counsel in support of my opposition to the Defendant's motion for summary judgment. The factual representations in the memorandum of points and authorities are true and correct to the best of my knowledge and belief, and I reiterate here as part of my Declaration those attributed to me.

**Factual Background**

　　1.　　I expected to graduate with my medical degree in May 2014. Throughout the program, I experienced various bouts of anxiety and serious difficulty focusing related to my Attention Deficit Hyperactivity Disorder (ADHD). There existed a manifestation of disability.

　　2.　　Prior to matriculation, I saw Paul G. Durr, M.D., for a routine pre- medical school screening physical examination.

1

3. I saw Dr. Durr again on January 11, 2012, at which time I reported to him that I was having attention span issues, having difficulty studying, having difficulty performing in class, and having depression and anxiety issues.

4. I am still being treated for ADHD by Dr. Anastasiou. He prescribes me Adderall, 20 milligrams, extended release daily.

5. In February of 2011, during my first year of medical school, I met with GWU faculty members and class mentors, Dr. Richard Cytowic and Dr. Seema Kakar, to discuss my mental-health issues, particularly that they were impacting my performance as a medical student. At that time, no recommendations for accommodations were made by GWU. Neither faculty member recommended that I visit any departmental office to seek proper accommodations or counseling for my anxiety and depression issues.

6. In February 2012, I met with Dean Rhonda Goldberg and with Dean Matthew Mintz to discuss the issues of anxiety and depression that were affecting my ability to perform as a medical student.

7. In March 2012, I met with Dean Goldberg again because of concerns in my POM course due to my anxiety issues.

8. In October of 2012, I met with Dean Goldberg and Dean Yolanda Haywood. At that time, I again reported my anxiety issues and my ADHD diagnosis and disclosed that I was prescribed medication for ADHD. Dean Goldberg again suggested that I see a therapist or counselor, but once again no one at GWU told me to seek help or provided me with the time needed to seek counseling. I was not aware of the Disability Services Center and was not advised to contact them.

9. Also in October 2012, I spoke to Andrea Flory, my course instructor, and informed her that I had severe test anxiety – especially during multiple-choice examinations. Dr. Flory was also aware that I was struggling in my courses. Again, GWU did nothing in response, and I was not told about the Disability Services Center either.

10. The incident, which GWU alleged may have been a violation of the Honor Code, was that during an examination on December 14, 2012. I continued to pencil in bubbles on a multiple choice examination answer sheet, or scantron, after the time for the examination was up. On the date in question, I was extremely nervous, panicked, and my ADHD symptoms were impacting my thought processes and impulsivity control. Though I had answered all of the examination questions in my test booklet, I did not have enough time to bubble in the answers on the scantron. I did not intend to cheat on the exam.

11. Throughout this entire period of time, and up until the date of the incident, I was continuing to see my Primary Care Physician, Dr. Durr, who was treating me for my ADHD.

12. I have always had extreme anxiety issues with taking multiple choice examinations.

13. I did everything in my power to inform school officials that I needed help in medical school due to my depression, anxiety, and ADHD issues. I knew I had a problem, which is why I continued seeking help from my treating physician, Dr. Durr.

14. If I was offered proper testing conditions, I would not have run out of time before completing the transfer of my answers from my examination booklet to my answer scantron.

15. I am informed and believe that I passed the examination.

16. On or about February 4, 2013, I received a notice from the Associate Dean of Student Affairs of GWU that I was accused of a possible violation of the Honor Code.

17. It was the common and accepted practice of the GWU medical school that students were permitted to transfer their final answers from the examination booklet onto a multiple choice answer sheet, or scantron, after the time for the examination expired, which is what I did in this case.

18. On March 5, 2013, I acknowledged to the Subcommittee of Professional Comportment that I continued to pencil in bubbles on the multiple choice examination scantron after time for the examination was up, that I was aware the examination proctor knew I was transferring my responses from my test booklet to my scantron after the examination time expired and that the proctor instructed me to stop transferring my examination responses but that I continued to do so. I did not attempt to engage in academic dishonesty or to conceal my actions from the proctor, nor did I ever intend to gain an unfair advantage or to cheat on the examination. I simply completed the examination in a manner in which I had always been allowed to do in the past at GWU.

19. Pursuant to the Honor Code, due to the recommendation of dismissal, I was referred to the Medical School Executive Council (MSEC) to review the findings and recommendations of the Subcommittee. Once again, I admitted the facts of the allegation against me to the MSEC and maintained that my conduct did not involve academic dishonesty because there was no attempt to conceal my actions from the proctor nor did I ever intend to gain an unfair advantage or to cheat on the examination – my answers were complete in the examination booklet but not transferred onto the examination scantron at the moment time allotted for the examination expired. I stated once again that I simply completed the examination in a manner in which he had always been allowed to do in the past at GWU.

20.	The Subcommittee's decision failed to acknowledge the fact that I suffer from ADHD, for which I had been seeking assistance from medical school faculty and administrators for many months and which caused me to act impulsively during the examination due to ADHD-related anxiety that resulted in the charge of academic dishonesty.

21.	On April 30, 2013, the MSEC submitted its decision upholding the decision of the Subcommittee and recommending that I be dismissed from GWU.

22.	On May 22, 2013, the Dean of the School of Medicine and Health Sciences issued a decision upholding the recommendation of the Subcommittee and the MSEC.

23.	I appealed this decision to the Provost. The Provost issued a decision on my Appeal on July 8, 2013, upholding the decisions of the Subcommittee, the MSEC and the Dean.

24.	Subsequently, I was removed from the medical school and was not permitted to reapply.

25.	The December 14, 2012, incident was caused because of my anxiety and impulsivity issues that are directly related to my ADHD diagnosis that I am still being treated for today.

I declare under the penalty of perjury under the laws of the United States of America that the forgoing is true and correct.

Executed this 18th day of September, 2015.

						_____/s/ Sina Chenari_____
						SINA CHENARI